Dexter C. POSS, Sr., et al., Plaintiffs,

v.

**GEORGIA REGIONAL HOSPITAL OF AUGUSTA, GEORGIA, et al., Defendants.**

Civ. A. No. CV185–130.

United States District Court, S.D. Georgia, Augusta Division.

Dec. 3, 1987.

---

Austin E. Catts, Robert H. Benfield, Jr., Atlanta, Ga., for plaintiffs.

Percy J. Blount, Gary A. Glover, A. Rowland Dye, Warren D. Evans, Augusta, Ga., Patricia Downing, Staff Asst. Atty. Gen., Atlanta, Ga., Paul H. Dunbar, III, Augusta, Ga., for defendants.

## ORDER

BOWEN, District Judge.

The above-captioned case is an action brought pursuant to 42 U.S.C. § 1983 for damages resulting from the death of plaintiffs' son Dexter C. Poss, Jr. Jurisdiction over this action is conferred upon the Court by 28 U.S.C. §§ 1331 and 1343 and by the principles of pendent jurisdiction. Present-

ly before the Court is defendant Georgia Regional Hospital's and defendant Dr. Kenneth A. Azar's motion for summary judgment. A hearing was held on the motion on September 24, 1987, in Augusta, Georgia.

## I. FINDINGS OF FACT

The deceased, Dexter C. Poss, Jr. (Cy Poss), was taken to the McDuffie County Hospital on October 15, 1984, after attempting to take his own life by taking an overdose of sleeping pills. After being treated and observed for three and one-half hours, the decision was made to transfer Poss to University Hospital in Augusta, Georgia. Upon the request of his family, Poss was instead transferred to the Veterans Administration Hospital in Augusta.

Poss was examined at the Veterans Administration Hospital upon his arrival at approximately 9:15 o'clock P.M. A decision was then made to transfer Poss to Georgia Regional Hospital where he was admitted at 10:35 o'clock P.M. Upon admission to Georgia Regional Hospital, Poss was given mental and physical examinations. Dr. Robert Gottschalk, Jr. conducted the mental examination, after which Poss was kept in the hospital overnight. On the morning of October 16, 1983, Dr. Kenneth A. Azar discharged Poss.

After Poss was released, his father carried him back to the younger Poss' apartment in Thomson, Georgia. At approximately 12:00 noon, Cy Poss was involved in an automobile accident in Thomson. He was arrested shortly thereafter and was incarcerated in the Thomson City Jail. Poss was released from the jail, but upon the direction of Sheriff William B. Swan, Poss was subsequently picked up and transported back to the jail. When he arrived back at the jail, Poss was locked in a cell with at least two other prisoners. A short time after being placed in the cell, a shot was fired which resulted in a bullet wound to Poss' head. Poss was transferred to the Medical College of Georgia where he died. A .38 caliber revolver was found in the cell in which Poss was shot.

## II. CONCLUSIONS OF LAW

The plaintiffs' action for the wrongful death of Cy Poss is based upon claims of medical negligence and upon 42 U.S.C. § 1983. Defendants Georgia Regional Hospital of Augusta, Georgia ("Georgia Regional") and Dr. Kenneth A. Azar ("Dr. Azar") (collectively "state defendants") have moved for summary judgment. The state defendants contend that plaintiffs' claims are barred by the doctrine of governmental immunity, and Dr. Azar additionally claims that the plaintiffs' action against him is barred by the statutory immunity conferred under O.C.G.A. § 37–3–4.

Summary judgment should be granted "if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and demonstrating that there is an absence of any dispute as to a material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Also, the moving party may be granted summary judgment if they show the court that there is an absence of evidence to support the non-moving parties' case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party makes this showing, then it is entitled to a judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Id.*, 106 S.Ct. at 2553. This Court in ruling on a summary judgment motion must determine whether under the governing law there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Moreover, a mere existence of a scintilla of evidence in support of the plaintiffs' position is not sufficient to defeat a summary judgment motion; there must be evidence on which the jury could reasonably find for the plaintiffs. *Anderson*, 106 S.Ct. at 1512. All reasonable doubts, however, must be resolved in favor of the party opposing summary judgment. *Casey Enterprises v. American Hardware Mutual Insurance Co.*, 655 F.2d 598, 602 (5th Cir. 1981). When, however, the moving party's motion for summary judgment has pierced the pleadings of the opposing party, the burden then shifts to the opposing party to show that a genuine issue of fact exists. This burden cannot be carried by reliance on the conclusory allegations contained within the complaint. *Morris v. Ross*, 663 F.2d 1032, 1033 (11th Cir.1981).

### A. Plaintiffs' Claim Against Georgia Regional Hospital

■ The defendant Georgia Regional contends that the doctrine of sovereign immunity bars plaintiffs' claim against it. Sovereign immunity and official immunity are two subcategories of governmental immunity. In this state, sovereign immunity is provided for under Article 1, Section 2, Paragraph 9 of the 1983 Constitution of the State of Georgia. Under this doctrine, which has been recognized since the adoption of the common law, the state and its departments and agencies are immune from liability, unless the immunity is waived. *Hennessy v. Webb*, 245 Ga. 329, 264 S.E.2d 878 (1980). Official immunity exists in this state for those discretionary acts of an officer of the state which are non-ministerial, which are within the scope of the officer's authority, and which are without willfulness, malice or corruption. *Id.* at 330–31, 264 S.E.2d at 880.

One of the ways by which sovereign immunity can be waived is where liability insurance has been provided. Sovereign immunity is waived "as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance provided." 1983 Ga. Const., Art. I, Sec. 2, Para. 9.

In the case *sub judice*, Dr. Azar is covered by a comprehensive general liability insurance policy. The policy provides in pertinent part:

This policy covers the following: PERSONAL INJURY, BODILY INJURY, SICKNESS, DISEASE OR DEATH AND PROPERTY DAMAGE caused by or resulting from error, omission or negligence *in the performance of duties within the scope of an insured's employment* with a participating entity that has purchased coverage prior to the date of the occurrence.

In consideration of the payment of the appropriate premium, and subject to all of the limitations as set forth in this policy or any addendum hereto, the Fund hereby agrees that it will provide the following coverage:

A) Comprehensive general liability insurance. The Fund will pay on behalf of any insured, all sums which the insured shall become legally obligated to pay as damages, court costs and attorney fees, because of bodily injury, property damage or personal injury resulting from any job related occurrences caused by any insured. The limitation on the Fund's liability under this section shall be as stated in the declarations attached hereto and made a part of this policy; provided, however, where damages are incurred as a combination of bodily injury, property damage or personal injury, all such damages shall be combined in calculating the total liability of the Fund for any one occurrence caused by any insured and the total liability of the Fund shall not exceed the per occurrence coverage as set forth in the declarations attached hereto.

B) Occupational errors or omissions liability insurance. The Fund will pay on behalf of any insured, all sums which the insured shall become legally obligated to pay as damages, court costs and attorney fees, arising out of the performance of or failure to perform official duties in the insured's capacity as an officer or employee and caused by the insured. The Fund will also pay on behalf of the insured all such sums within the policy limits arising out of the rendering of or failure to render services by any person for whose acts or failure to act such insured is legally responsible by reason of the insured's position.

Under the terms of the policy, "insureds" are defined as:

1) *Employees* of the State of Georgia, employed by participating Departments or Agency, at the time of an occurrence covered hereinafter.

2) All employees of participating Authorities and Instrumentalities of the State of Georgia, for an occurrence hereinafter covered.

3) Board Members designated by participating entities.

4) Elected or appointed members of participating entities.

(emphasis in original)

As this insurance covers any negligent act "arising out of the performance of or failure to perform official duties in the insured's capacity as an officer or employee and caused by the insured," any liability for Dr. Azar's actions is covered under the terms of the policy. Thus, Dr. Azar's official immunity is waived to the extent of the insurance. *See Martin v. Dept. of Public Safety,* 257 Ga. 300, 357 S.E.2d 569 (1987). As Georgia Regional is vicariously liable for the acts of its employees, the waiver of Dr. Azar's official immunity acts as a waiver of Georgia Regional's sovereign immunity to the extent of the available insurance. Accordingly, defendant Georgia Regional's motion for summary judgment is DENIED.

**B. Plaintiffs' Claim Against Dr. Azar.**

While the general comprehensive liability insurance policy acts as a waiver of Dr. Azar's official immunity, the defendant Dr. Azar also asserts that he is entitled to the protection of the statutory immunity provided for in O.C.G.A. § 37–3–4. This section provides:

Any physician, psychologist, peace officer, attorney, or health official, or any hospital official, agent, or other person employed by a private hospital, or at a facility operated by the State, by a political subdivision of the State, or by a hospital authority created pursuant to Article 4 of Chapter 7 of Title 31, who acts in good faith in compliance with the admis-

sion and discharge provisions of this chapter shall be immune from civil or criminal liability for his actions in connection with the admission of a patient to a facility or the discharge of a patient from a facility.

■ Dr. Azar's actions in discharging Cy Poss are immunized from liability by section 37–3–4. Dr. Azar is a physician employed at a state-operated facility. His discharge of Mr. Poss appears to be in good faith compliance with the applicable admission and discharge provisions of Title 37, Chapter 3 *. In short, Dr. Azar is the type of defendant that this code provision was designed to protect.

The plaintiffs contend that the immunity conferred by section 37–3–4 does not cover Dr. Azar's actions. The statutory provision covers "actions in connection with the admission of a patient to a facility or the discharge of a patient from a facility." The plaintiffs make a valiant effort to create a distinction between Dr. Azar's decision to release Cy Poss from Dr. Azar's medical treatment of Mr. Poss. The plaintiffs claim that the gravamen of their action is not whether Dr. Azar properly discharged the deceased but whether he "properly treat[ed] the serious medical needs of the young Cy Poss...."

Despite their skillfully phrased attempt to create a distinction, no such distinction exists. The plaintiffs' cause of action does rest upon Dr. Azar's release of Mr. Poss. Indeed, the plaintiffs themselves seemed to recognize this fact when they stated, "Plaintiffs' claims of medical negligence center around the hasty decision by Defendant Azar to *release* Cy Poss roughly twelve (12) hours after Cy's initial suicide attempt, despite the overwhelming evidence mandating confinement and without consulting the most obvious readily available sources of critical information." (emphasis supplied) (Plaintiffs' brief in response to the motion for summary judgment, p. 2). The coverage provided by

section 37–3–4 applies to Dr. Azar's actions.

■ The plaintiffs also contend that the immunity conferred by section 37–3–4 is a limited codification of official immunity and, as such, is waived by the existence of liability insurance on Dr. Azar. I cannot agree.

The statutory immunity conferred by section 37–3–4 is a limited, good-faith immunity which is separate and distinct from official governmental immunity. Section 37–3–4 provides a qualified immunity which immunizes those who act in "good faith compliance with the admission and discharge provisions of [O.C.G.A. Title 37, Chapter 3]." Official governmental immunity, which applies to acts done within the scope of an official's authority, is qualified by the proviso that acts be done "without willfulness, malice, or corruption." *Hennessy*, 245 Ga. at 331, 264 S.E.2d at 880. Section 37–3–4 immunizes only those decisions involving the admission or discharge of a patient from a facility, while the governmental immunity applies to "any suit against an officer or agent of the State, in his official capacity...." *Id.* at 330, 264 S.E.2d at 879. Section 37–3–4 details a limited list of officials to whom the provision applies, while official governmental immunity exists for "officers and agents of the state." Had the Georgia General Assembly chosen to provide means of waiver for the statutory immunity code provision, it could have done so. This Court will not undertake to do that which the legislature has chosen not to. Accordingly, the liability insurance coverage which waived Dr. Azar's official governmental immunity has no waiver effect on Dr. Azar's statutory immunity. There being no genuine issue of material fact, defendant Dr. Azar's motion for summary judgment is GRANTED.

---

\* The applicable discharge provisions which relate to the discharge of involuntary patients such as the deceased in this case are O.C.G.A. §§ 37–7–43; 37–7–64; and 37–7–91. No evidence exists to support plaintiffs' claim that Dr. Azar acted in bad faith in compliance with any of these provisions.